## Case No. 11,343.

### POTTER v. WRIGHT.

[1 Wkly. Notes Cas. 637; 1 N. Y. Wkly. Dig. 245.] 1

Circuit Court, E. D. Pennsylvania. June 18, 1875.

#### BANKRUPT ACT, § 43—TRUSTEE.

Certain creditors of a bankrupt moved for an order of court that the bankrupt and his assignee should convey the former's property to the complainants as trustees under section 43 of the bankrupt act [of 1867 (14 Stat. 517)]. Thereupon the court directed (inter alia) the said assignee and bankrupt to execute proper conveyances under the direction of the register, "subject to the approval of the court." This was done, no creditor objecting, but the approval of the court was not obtained. Certain bonds and mortgages to prevent merger, etc., were temporarily assigned by the trustees to the defendant, who gave a receipt therefor, stating that "all the above recited assignments of mortgages to be assigned by me" to the said trustees. They were, however, deposited in the safe of one of the complainants till the defendant, in the complainants' absence, and without their consent, obtained the securities and refused to deliver or re-assign them. Held, that the complainants were not entitled to the relief prayed for, as an essential part of the foundation of their claim, viz. the approval of the court, was wanting.

This was a bill in equity against Samuel Wright by Stephen A. Potter and William Wright, trustees in bankruptcy of Bancroft and Grambo. The bill alleged that Bancroft and Grambo had severally been adjudged bankrupts in 1873, and that Samuel Wright had been chosen assignee of both bankrupts. Subsequently, at a meeting of the creditors of the respective bankrupts, held under the provisions of the forty-third section of the bankrupt act, Potter and William Wright, the plaintiffs, were appointed trustees, and certain other persons a committee of creditors, under whose direction the trustees were to wind up, settle, and distribute the estates of the bankrupts. It was further resolved, that the said estates should be settled as one estate, and that the same persons should be trustees and committee of both estates. The proving creditors gave their assent to such deeds as might be proper to carry into effect these resolutions. The counsel of Samuel Wright subsequently moved on his behalf as assignee and creditor, and for other creditors, for an order of court that the respective bankrupts, and Samuel Wright, the assignee, should convey all of the said estates to Potter and William Wright, the plaintiffs, as trustees, and that upon the execution of the necessary deeds, all further proceedings in the respective bankruptcies should be stayed. The court thereupon ordered, inter alia, that the said assignee in each case and respective bankrupts should, under the direction of the

---

1 [1 N. Y. Wkly. Dig. 245, contains only a partial report.]

register, "subject to the approval of the court," execute conveyances and transfers of the respective properties and estates, so that they should be administered for the benefit of the creditors by said Potter and William Wright, as if they had been originally appointed the respective assignees in bankruptcy. At a meeting of the committee of the creditors held in September, 1873, it was resolved, that there should be paid to each creditor a certain number of bonds executed by Grambo, and that upon receiving the same each creditor should surrender to the trustees all evidences of indebtedness and collaterals therefor held by him for his debt. In accordance with the terms of this resolution nearly all the creditors of Bancroft and Grambo gave up the mortgages held by them. While the transfers of real estate were pending, it was deemed advisable, in order to prevent merger, etc., that all mortgages against the bankrupt estate should be temporarily assigned to Samuel Wright, he giving the following receipt in writing: "Philadelphia, Sept. 16th, 1873. Received of —— all the above recited assignments of mortgages to be assigned by me to William Wright and Stephen A. Potter, trustees of estate of Harrison Grambo. (Signed) Samuel Wright."

The said assignments were made to defendant solely for the purposes in this paragraph mentioned. Among the securities so assigned were the following: (Here followed a description of four bonds and mortgages.) These securities remained in the possession of Wright for some time, and on his becoming ill were placed in Grambo's fireproof. The committee and trustees, considering this an improper place, sent for and obtained them, and they were finally placed in the fireproof of the complainant Potter; the joint receipt of Potter, and of Samuel Wright, acting for William Wright, having been first given therefor to the counsel of Samuel Wright. In June, 1874, Samuel Wright and Grambo went to the said fireproof in Potter's absence, and, having induced his wife to open the safe, took therefrom the four mortgages hereinbefore mentioned, which were then placed in Grambo's fireproof, and their return or assignment refused. A decree was prayed for directing the defendant to assign to the complainant the said bonds and mortgages, and restraining him from assigning or transferring the same to others.

The case was heard on the averments in the bill, no answer having been filed or evidence taken.

[A proceeding in bankruptcy had been instituted in the district court, but, on account of its crude form, the court recommended a bill in equity. Case No. 5,680.]

Sutton & McMurtrie, for complainants.

The only question here is whether the defendant ought to be compelled to re-assign these mortgages to us, from whom he received them, upon a receipt promising to make such return.

(Cadwalader, District Judge. Your right to have them depends on the order of court referred to in your bill. The conveyances, etc., were to be made expressly "subject to the approval of the court," which has never been obtained.)

It was not understood that more than the acquiescence of the court was necessary, when none of the creditors expressed dissent. This objection was never before made by any one. The register, the court's officer, approved and obeyed. The whole matter was transacted under his, and therefore this court's, direction and approval. Nor is the approval of the court necessary where none of the creditors dissent. The court is only to interfere when required to do so by a creditor. Besides, the court will not look into our title as against a wrongdoer. This property was obtained from us on a promise to return it, which return is now refused. The question of our title cannot be raised by the defendant.

Chapman Biddle, contra, was not called on.

Eo die McKENNAN, Circuit Judge. Section 5103, p. 989, of the Revised Statutes provides for the settlement of a bankrupt estate by trustees. The language of that section plainly shows that a responsibility was imposed upon the court which it cannot shirk. "If it appears, after hearing the bankrupt and such creditors as desire to be heard, that the resolution was duly passed, and that the interests of the creditors will be promoted thereby, the court will confirm it; and upon the execution and filing, by or on behalf of three-fourths in value of all the creditors whose claims have been proved, of a consent that the estate of the bankrupt shall be wound up, and settled by trustees, according to the terms of such resolution, the bankrupt, or, if an assignee has been appointed, the assignee, shall under the direction of the court, and under oath, convey, transfer," etc. Under this section Judge Cadwalader made the order referred to in the bill, but reserved his approbation of the measures to be adopted by directing that they should be made "subject to the approval of the court," which has never been obtained. An essential element is, therefore, wanting to the establishment of the complainant's rights, and they are not now entitled to the relief they ask for. Bill dismissed without prejudice.